UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GERALD VON TOBEL, | Case No.: 3:17-cv-00161-RCJ-WGC |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 34 |
| ISIDRO BACA, et. al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 34, 34-1 to 34-13.) Plaintiff filed a response. (ECF No. 45.) Defendants did not file a reply brief.

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 14.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are Vince Brooks, Ronald Hannah, John Manning, and Charles Raymond. Defendant Drexler was dismissed without prejudice for lack of service under Federal Rule of Civil Procedure 4(m). (ECF No. 39.)

The court screened Plaintiff's amended complaint and allowed him to proceed with Eighth Amendment claims for unsafe conditions and unsanitary conditions of confinement. (ECF No. 30.) First, Plaintiff was allowed to proceed with the Eighth Amendment claim of deliberate indifference to his safety. Plaintiff alleges that he told prison officials for months about the inoperative drain in the bathroom that led to water constantly covering the surface of the bathroom floor and caused the floor to be slippery. Despite being informed of this, prison officials did not clean the water up or repair the drain because the showers did not have the proper pitch for drainage. As a result, Plaintiff slipped on the floor while using the bathroom at night, injured his back, and had to have back surgery.

Second, Plaintiff was allowed to proceed with the Eighth Amendment conditions of confinement claim, based on allegations that for over six months Plaintiff had to use a bathroom whose floor was covered with human excrement and water with bodily fluids due to poor drainage and the lack of cleaning supplies.

Defendants move for summary judgment, arguing: (1) they are entitled to qualified immunity; (2) they cannot be sued for money damages in their official capacity; (3) Plaintiff cannot sue for injunctive relief; (4) Manning and Hannah did not personally participate in the alleged constitutional violations; (5) Plaintiff did not properly exhaust his administrative remedies as to Hannah and Manning; and (6) Raymond and Brooks were not deliberately indifferent to Plaintiff's safety.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

*v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

3

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Manning and Hannah**

Defendants Manning and Hannah argue that they did not personally participate in the alleged constitutional violations, and that Plaintiff did not properly exhaust his administrative remedies as to them.

In his response, Plaintiff states that he does not oppose the argument that Manning and Hannah are entitled to summary judgment; therefore, Defendants' motion should be granted as to Manning and Hannah.

**B. Official Capacity Claims against Brooks and Raymond**

A state official sued in his or her official capacity for damages is not a person subject to suit under section 1983. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 n. 24 (1997); *Will v Michigan Dep't of State Police*, 491 U.S. 58, 71 (1983); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). "[F]ederal courts are barred by the Eleventh Amendment from awarding damages against state officials acting in their official capacities[.]" *Snow v. McDaniel*, 681 F.3d 978, 991 (9th Cir. 2012) (citing *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir. 2003)). State officials sued in their official capacity for injunctive relief, however, are persons for purposes of section 1983. *See Will*, 491 U.S. at 71 n. 10; *Flint*, 488 F.3d at 825.

Plaintiff acknowledges he cannot sue Brooks and Raymond in their official capacities for money damages. He also asserts that he is no longer seeking injunctive relief.

Therefore, Defendants' motion for summary judgment should be granted with respect to Plaintiff's official capacity claims against Raymond and Brooks.

## C. Individual Capacity Eighth Amendment Claims against Brooks and Raymond

### 1. Standard

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (19914). The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)); *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995) (prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety").

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and subjective component. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citation omitted). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835.

### 2. Evidence and Argument

Defendants submit the declaration of Kathryn Reynolds, who is employed at NDOC as an Administrative Services Officer II, and is responsible for the overall supervision of the maintenance unit for NNCC. During the time period at issue, Greg Holp was the facility maintenance supervisor at NNCC, but he has since died. During 2013, Reynolds states that as part of a larger renovation project within NNCC, the Unit 2 shower stalls had stainless steel wall panels installed. She states "on information and belief" that there was a sand epoxy application on the floor of all Unit 2 restrooms to reduce the chance of inmates slipping and falling on wet floors. She had a facility maintenance supervisor photograph the bathroom in Unit 2 in November of 2019, and states that the photographs show that the floor is sloped toward and not away from the drain.[1] (Reynolds Decl., ECF No. 34-9.)

According to Brooks, he was assigned to Unit 2 at NNCC from January to September of 2014. He has no independent recollection of the events alleged by Plaintiff; however, if a maintenance issue was brought to his attention, he was trained to complete a work order and submit it to the maintenance department. He believes he would have done so if he received a complaint. He has no recollection of a safety hazard in the Unit 2 shower stall pertaining to the pooling of water as alleged by Plaintiff. He does recall that Unit 2 had porters assigned, whose job it was to clean the unit twice a day, especially the restroom areas, so there was no opportunity for water to pool. In addition to porters, all inmates had access to a mop and disinfectant at all times and could use it to clean up a mess.

Brooks says it is possible that Plaintiff informed him of his concerns regarding the shower drain. Insofar as Plaintiff alleges he had to walk through standing water in the shower

---

[1] The photographs are not included as an exhibit to Defendants' motion.

7

stall to enter and exit his dorm, Brooks maintains that is not true because the shower was not situated in a way so as to allow water to enter the hallway. It is possible that Brooks was made aware of the slow drain and inspected the area, but he never told an inmate not to inform him about any issues, and it would have been his standard practice to inform the maintenance department to correct the problem. He has never threatened an inmate with discipline. If Plaintiff were concerned for his safety regarding the water pooling, he could have taken an alternative route in and out of the dorm area by entering and exiting through the four man dorm, and there were three other bathrooms including showers in the unit that Plaintiff could have used. (Brooks Decl., ECF No. 34-1.)

According to Raymond, he was assigned to Unit 2 at NNCC, which contained four wings, and each wing had its own bathroom facility. Part of his duties were to inform maintenance personnel of problems, and to make sure the unit was cleaned daily by inmates. He reiterates Brooks' statement that there were porters, whose job it was to clean the unit's restrooms. In addition, inmates had access to cleaning supplies, including a mop and disinfectant, at all times. Raymond recalls some of the complaints Plaintiff made in 2014 regarding the plumbing in the Unit 2 bathroom. He recalls that the civilian contractor who renovated the Unit 2 bathroom did not properly slope the shower floors toward the drain. After the renovation, 3/4 length shower curtains were installed. Water would be on the floor directly outside the shower itself, and the inmates knew to place a rolled up towel at the front of the shower to keep it from going onto the main floor restroom.

In 2014, Raymond was aware of water spilling into the restroom area, but never saw water "pooling" and never saw "stagnant water with human feces" in the unit, as the Porters cleaned each bathroom and shower area twice a day. When Plaintiff approached him about the

water outside the shower stall, Raymond told him that the plumbing department was aware of the problem and reviewed it and there was little they could do as it was not a plumbing issue as much as it was an improperly sloped floor. He does not recall submitting a work order or calling the plumbing department on the issue as he knew that Brooks had already done so. Brooks told him that he had communicated with the maintenance department regarding the improperly sloped floor. He never heard Brooks threaten Plaintiff with discipline, and he never did so. (Raymond Decl., ECF No. 34-2.)

Plaintiff reported in his grievance that the water pooled on the bathroom floor in the Unit 2 restroom regularly after inmate showering. He stated that it began when the institution replaced the full length shower curtains with 3/4 length shower curtains, and the shower floor did not appear to be graded at the right slope angle. He asserted that this created a risk of slip and fall, and this hazard was reported to unit staff, who in turn indicated that it had been reported to maintenance, but nothing was done to correct the hazard. (ECF No. 34-3 at 6-7.)

Plaintiff states in his declaration that shortly after he arrived in Unit 2, he noticed the floor in the inmate restroom/shower area was constantly flooded with sewage. Although the floor was mopped twice a day, the sewage would reappear within one hour after being mopped. On several occasions between April and July of 2014, he reported to Brooks and Raymond that there was constantly standing sewage in the restroom. Raymond told him, "don't drink it, it's a biohazard, try not to slip buddy." Brooks said, "I know it's slippery Von Tobel, I've slipped a couple of times myself, don't commit crimes and you won't come to prison." Both officers laughed after this statement. Plaintiff claims that both Brooks and Raymond told him on several occasions that they never contacted the maintenance department in response to his complaints. Brooks said he would not contact maintenance because, "Unit 2 cleans up its own messes."

Neither Brooks nor Raymond took any action to fix the problem. On July 1, 2014, Plaintiff slipped and fell in the restroom, and suffered severe pain and required surgery. (Pl. Decl., ECF No. 45-1.)

**3. Analysis**

First, subjecting "a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995), *amended on denial of reh'g*, 75 F.3d 448.

Brooks does not address Plaintiff's claim that he complained of standing sewage. Raymond states that he never saw stagnant water with human feces. In his declaration, Plaintiff states that the floor was constantly flooded with sewage that would reappear within hours of the floor being mopped, and he reported this to Brooks and Raymond, who acknowledged it posed a risk.

Plaintiff has created a genuine dispute of material fact as to whether Brooks and Raymond knew of and disregarded a risk to his health from sewage on the floor; therefore, their motion for summary judgment should be denied with respect to this claim.

Second, the court will address the unsafe conditions claim. Brooks states that he has no recollection of a safety hazard in Unit 2, but porters cleaned twice a day, and inmates had access to a mop and disinfectant. Raymond recalls Plaintiff's complaints about the water in the bathroom, but states that it was a result of an improperly sloped floor. Raymond acknowledges that water accumulated on the floor outside the shower, but states that inmates knew to place a rolled up towel at the floor of the shower to keep the water from flowing to the main floor of the restroom. Raymond maintains that he told Plaintiff that Brooks had contacted maintenance about the problem, but that there was little they could do.

Plaintiff, on the other hand, presents evidence that he notified Brooks and Raymond on several occasions about the issue of water pooling on the floor, and that Brooks and Raymond stated to him that they had not in fact contacted maintenance about the issue, and he subsequently slipped and fell and injured his back.

Plaintiff raises a genuine dispute of material fact as to whether Brooks and Raymond knew of a risk to Plaintiff's safety and disregarded that risk. Therefore, summary judgment should also be denied with respect to this claim.

**D. Qualified Immunity**

The qualified immunity analysis consists of two steps: (1) viewing the facts in the light most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017).

Defendants conflate their qualified immunity argument with their arguments that they cannot be sued for money damages in their official capacity; that Plaintiff cannot sue them in their official capacity for injunctive relief because there is no likelihood he will be subject to these conditions in the future; and, that Manning and Hannah were not personally involved in the alleged unconstitutional conduct. (ECF No. 34 at -15.)

The reason Defendants cannot be sued for money damages in their official capacity is because a state official sued in his or her official capacity for damages is not a person subject to suit under section 1983, and courts are barred by the Eleventh Amendment from awarding damages against state officials acting in their official capacities. It is *not* because of *qualified* immunity. Similarly, the reason Plaintiff cannot proceed with his claim for injunctive relief against Defendants in their official capacity has is based in substantive law, and not on the

qualified immunity doctrine. Moreover, the personal participation arguments are also not based on an analysis of qualified immunity, but on the fact that "for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]" *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citation omitted).

Finally, the law set forth above regarding the Eighth Amendment claims was clearly established at the time these events took place, and if Plaintiff's version of events is believed then there was a violation of his Eighth Amendment rights.

In sum, Defendants assert no valid argument that entitles them to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' Motion for Summary Judgment (ECF No. 34) as follows:

(1) the motion should be **GRANTED** as to defendants Hannah and Manning;

(2) the motion should be **GRANTED** with respect to the official capacity claims against defendants Brooks and Raymond; and

(3) the motion should be **DENIED** as to the individual capacity claims against defendants Brooks and Raymond.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

    2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 18, 2020

                                            _____
                                            William G. Cobb
                                            United States Magistrate Judge